# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CV. NO. 10-00432 DAE-KSC |
| | ) | |
| BUDDY VINCENT KALEI | ) | |
| MAUNAKEA and KIMBERLY | ) | |
| KUUIPO MAUNAKEA | ) | |
| | ) | |
| Debtors, | ) | |
| _____ | ) | |
| BUDDY VINCENT KALEI | ) | |
| MAUNAKEA and KIMBERLY | ) | |
| KUUIPO MAUNAKEA, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOWARD M.S. HU, Standing | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee | ) | |
| _____ | ) | |
| In re | ) | |
| | ) | |
| IVER KIMLAN MOMI GASPAR | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| IVER KIMLAN MOMI GASPAR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |

HOWARD M.S. HU, Standing )
Trustee, )
)
                    Appellee. )
_____ )


### ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

On February 28, 2011, the Court heard Appellants' Appeal. Jean Christensen, Esq., Robert K. Kekuna, Jr., Esq., and Stuart T. Ing, Esq., appeared at the hearing on behalf of Appellants; Bradley R. Tamm, Esq., Seth K. Weaver, Esq., and Lissa D. Shults, Esq., appeared at the hearing on behalf of Appellee. After reviewing the motion and the supporting and opposing memoranda, the Court **AFFIRMS** the Bankruptcy Court's decision.

### BACKGROUND

This consolidated bankruptcy appeal stems from the treatment of native Hawaiian debtors' interests in real property leased pursuant to the Hawaiian Homes Commission Act ("HHCA"). Act of July 9, 1921, ch. 42, § 101(b)(1), 42 Stat. 108. At issue on appeal is whether these leaseholds should be considered property of the estate such that their value must be considered in a hypothetical liquidation of debtors' assets conducted pursuant to 11 U.S.C. § 1325(a)(4).[1]

---

[1] A Court may approve a plan under chapter 13 provided that, "the value . . . of property to be distributed under the plan on account of each allowed

2

I.    <u>Maunakea Appeal</u>

Appellants Buddy Maunakea and Kimberly Maunakea (collectively, "Maunakea Appellants"), both native Hawaiians, are debtors who voluntarily filed a chapter 13 bankruptcy petition and plan on October 23, 2009.  ("Maunakea App.," Doc. # 12, ex. 12, at 2.)  The Maunakea Appellants' assets include a leasehold interest of real property situated at 89-509 Puakolu Street in Waianae in the City and County of Honolulu ("Maunakea Property").  (<u>Id.</u>, ex. 1, Schedule A.)  This property is leased from the Department of Hawaiian Home Lands of the State of Hawaii ("DHHL") pursuant to the HHCA.  (<u>Id.</u>, ex. 7, at 2.)

In their schedules, the Maunakea Appellants valued their interest in the Maunakea Property to be $150,000 subject to a mortgage loan with a balance of $166,093.  (<u>Id.</u> at 3.)  Accordingly, the Maunakea Appellants did not claim an exemption for their interest in property because they allegedly had no equity to exempt.  (<u>Id.</u>)  The appellants did, however, claim that the entire value of all their real and personal property was subject to exemptions under 11 U.S.C. § 522(d) or secured claims.  (<u>Id.</u>, exs. 1, 2.)  The plan, therefore, estimated that there would be

unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. 1325(a)(4)

no distribution for general unsecured creditors in a hypothetical chapter 7 liquidation.  (Id., ex. 7, at 3.)

The Maunakea Appellants' combined net monthly income as listed on Schedules I and J was $350.  (Id., ex. 1, Schedules I, J.)  Per their plan, the Maunakea Appellants proposed to make 60 monthly payments of $350, including a monthly payment of $301.24 on their vehicle loan.  (Id., ex. 2.)  Under this plan, the Maunakea Appellants would pay 2.73 percent of their total unsecured debt as opposed to the zero percent the plan estimated general unsecured creditors would receive in a hypothetical chapter 7 liquidation.  (Id.)

On January 21, 2010, the Standing Trustee, Howard M.S. Hu ("Appellee") filed an objection to the chapter 13 plan.  (Id., ex. 3.)  The objection asserted that while the "debtors allege the [Maunakea Property's] value to be $166,093[,] [t]he tax assessed value on the fee simple interest of the property is $278,500."  (Id.)  On April 15, 2010, Appellee supplemented the objection asserting that the property had a market value of $260,000.  (Id., ex. 6, at 2.)  As a result, according to Appellee, the Maunakea Appellants had failed to provide the general unsecured creditors at least as much as they would receive in a chapter 7 liquidation.  (Id.)  Specifically, the new homestead valuation would make an additional $46,402 available for an estimated distribution of 36.5 percent on

general unsecured claims in a chapter 7 liquidation. (Id. at 3.) Any chapter 13 plan, according to Appellee, therefore had to provide at least this amount to the general unsecured creditors per 11 U.S.C. 1325(a)(4). Because the Maunakea Appellants' plan proposed that they pay general unsecured creditors only 2.73 percent of their total unsecured debt, it was invalid. Instead, according to Appellee, the Maunakea Appellants had to pay "not less than $1,206.16 per month" to general unsecured creditors. (Id.)

II.   Gaspar Appeal

Like the Maunakea Appellants, Appellant Iver Kimlan Momi Gaspar ("Appellant Gaspar") is a native Hawaiian debtor who voluntarily filed a chapter 13 bankruptcy petition and plan on March 5, 2010. ("Gaspar App.," 10-CV-00433, Doc. # 12, ex. 11, at 2.)[2] Appellant Gaspar's assets include a leasehold interest of real property situated at 86-292 Hokuukali Place in Waianae in the City and County of Honolulu ("Gaspar Property"). (Id., ex. 1, Schedule A.) This property is also leased from the DHHL pursuant to the HHCA. (See id., ex. 11, at 2.)

In her schedules, Appellant Gaspar valued the interest in the Gaspar Property to be $66,190 subject to a mortgage loan with a balance of $66,189. (Id.,

_____

[2] The case was consolidated after Appellant Gaspar filed her opening brief. (See Doc. # 21.)

5

ex. 1, Schedule A.)  Accordingly, Appellant Gaspar did not claim an exemption for her interest in the property.  (Id., Schedule C.)  Appellant Gaspar did, however, claim that the entire value of all her real and personal property was subject to exemptions under 11 U.S.C. § 522(d) or secured claims.  (Id.)  The plan, like the Maunakea Appellants' plan, estimated that there would be no distribution for general unsecured creditors in a hypothetical chapter 7 liquidation.  (Id., ex. 7, at 3.)

Appellant Gaspar's net monthly income as listed on Schedules I and J was $100.  (Id., Schedules I, J.)  Per the plan, Appellant Gaspar proposed making 36 monthly payments of $100, thereby paying 3.42 percent of her total unsecured debt as opposed to the zero percent the plan estimated general unsecured creditors would receive in a hypothetical chapter 7 liquidation.  (Id., ex. 2.)

On May 1, 2010, the Appellee filed an objection to the chapter 13 plan, (id., ex. 3) and an amended objection on May 5, 2010 (id., ex. 5).  As with the Maunakea Appellants, Appellee contended that Appellant Gaspar understated the worth of her leasehold which should have been valued at $225,000.  (Id., ex. 5, at 3.)  As a result, Appellant Gaspar had failed to provide the general unsecured creditors at least as much as they would receive in a chapter 7 liquidation.  (Id.)  Specifically, the new homestead valuation would provide sufficient funds for

Appellant Gaspar to pay off her general unsecured debt in its entirety. (Id. at 4.) Any chapter 13 plan, according to Appellee, therefore required a 100 percent distribution to unsecured creditors per 11 U.S.C. § 1325(a)(4). Because Appellant Gaspar's plan proposed that she pay general unsecured creditors only 3.42 percent of their total unsecured debt, it was invalid.

III.    Bankruptcy Court's Decision

Before the Bankruptcy Court both the Maunakea Appellants and Appellant Gaspar (collectively, "Appellants") presented the same legal arguments in response to Appellee's objections. The Bankruptcy Court heard the objections to the Appellants' plans together.[3] (See Gaspar App., ex. 12, at 2.)

Appellants did not contest the value of their leaseholds in the Maunakea and Gaspar Properties (collectively, "the Properties"). Instead, Appellants advanced two legal theories for why the value of their leaseholds should be excluded from the 11 U.S.C. § 1325(a)(4) analysis irrespective of the value ascribed to it. (Gaspar App., ex. 7, at 22, 32; Maunakea App., ex. 7, at 22, 32.) First, Appellants argued that the leaseholds should be excluded from the Appellants' respective estates under the exception provided in 11 U.S.C.

_____

[3] Indeed, the Bankruptcy Court considered objections raised by Appellee with respect to four chapter 13 plans, all with identical legal issues. (Gaspar App., ex. 12, at 2.) Only two are the subject of this appeal.

§ 541(c)(2) which states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." (Gaspar App., ex. 7, at 22–32; Maunakea App., ex. 7, at 22–32.) The leaseholds, according to Appellants, are beneficial interests of the property the DHHL holds in trust for all native Hawaiians and therefore exempt under this provision of the code. Appellants alternatively argued that, even if the trust exclusion did not apply to the debtor's interest in a native Hawaiian homestead, the interest should still be excluded per 11 U.S.C. § 365(c).[4] (Gaspar App., ex. 7, at 32–34; Maunakea App., ex. 7, at 32–34.)

At the hearing on June 21, 2010, the Bankruptcy Court heard the objections and issued the following oral decision:

> This strikes me as exactly analogous to the situation, in fact, it is the situation where you have a Trust, and let's just say it's regular private trust, that owns a bunch of real estate and has a bunch of beneficiaries, and the Trust decides to lease out the property, and happens to lease the property to one of the beneficiaries.
>
> In that situation, I think you would not say that the leasehold interest in the property is a beneficial interest in the Trust. There's two— two different things. You can be both the beneficiary of a Trust and a lessee of property from the Trust and the two interests in the Trust properties don't— don't become one in the same.
>
> I don't see anything in the Hawaiian Homes Commission Act that would change that. Certainly, there's a reason to be very cautions

---

[4] Appellants renew these arguments on appeal before this Court and will be discussed in depth infra..

when dealing with Hawaiian property, and I'm taking that very seriously, but I don't think that the— the act provides for any different treatment other than that.

There is the restriction on alienation of the leaseholds in the— in the Act. Those restrictions, by virtue of Section 541 (c)(1) of the Bankruptcy Code, don't prevent the property, that is the leasehold interest in these lots from becoming part of the Bankruptcy Estate, although they may limit the Trustee's ability or a hypothetical chapter 7 Trustee's ability to sell the property and, therefore, presumably would have a significant impact on the value of those properties. But the question of exactly what those values is, then becomes a question of fact in an individual case.

So I guess the main issue before me today is whether these leaseholds are or aren't property of the Bankruptcy Estate, and my view is that they are.

(Gaspar App., ex. 12, at 11–12; Maunakea App., ex. 12, at 11–12.)

On July 23, 2010, the Appellants appealed from the Bankruptcy Court's decision. (Doc. # 1; 10-CV-00433, Doc. # 1). On August 11, 2010, Appellee filed a motion to consolidate the appeals. (Doc. # 5; 10-CV-00433, Doc. # 5.) On September 9, 2010, the Appellants filed their Opening Briefs. ("Maunakea Br.," Doc. # 11; "Gaspar Br.," 10-CV-00433, Doc. # 14.) On September 25, 2010, the Appellee filed its Brief. ("Appellee Br.," Doc. # 15.) On October 14, 2010, the Maunakea Appellants filed their Reply Brief. ("Reply," Doc. # 17.) On October 19, 2010, Magistrate Judge Kevin S.C. Chang granted Appellee's motion to consolidate the appeals. (Doc. # 20.) At the hearing on February 28, 2011, the Court requested Supplemental Briefing on whether a

hypothetical Chapter 7 trustee could reasonably be expected to liquidate the leasehold.  On March 2, 2011, Appellants filed their Supplemental Brief.  ("Appellants' Supp. Br.," Doc. # 25.)  The same day, Appellee filed its Supplemental Brief.  ("Appellee's Supp. Br.," Doc. # 24.)

## STANDARD OF REVIEW

A district court applies the same standard of review applied by an appellate court in reviewing a bankruptcy appeal.  In re JTS Corp, 617 F.3d 1102, 1109 (9th Cir. 2010).  "The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo."  In re Kimura, 969 F.2d 806, 810 (9th Cir. 1992); see also In re JTS Corp, 617 F.3d at 1109 ("The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." (quotations omitted)); In re Marquam Inv. Corp., 942 F.2d 1462, 1465 (9th Cir. 1991) ("We review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo."); In re Guadarrama, 284 B.R. 463, 468 (C.D. Cal. 2002) ("When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal.  The district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. It reviews the bankruptcy court's

conclusions of law de novo." (citations omitted)).  "'Mixed questions of law and fact are reviewed de novo.'"  In re JTS Corp., 617 F.3d at 1109 (quoting In re Chang, 163 F.3d 1138, 1140 (9th Cir. 1998)).

Whether a property interest is property of the bankruptcy estate per 11 U.S.C. § 541 is a question of law that is reviewed de novo.  In re White, 389 B.R. 693, 698 (B.A.P. 9th Cir. 2008); see also In re Lowenschuss, 170 F.3d 923, 929 (9th Cir. 1999) (reviewing de novo whether property interests were created by state law in the context of a bankruptcy decision).  As is the decision to confirm a Chapter 13 plan which requires statutory interpretation.  See In re Villanueva, 274 B.R. 836, 840 (B.A.P. 9th Cir. 2002) ("[W]here . . . the issue is whether the facts satisfy the legal rule, it is a mixed question of law and fact, which we review de novo.")

## DISCUSSION

Appellants raise the following four issues on appeal:

1.	Whether the Bankruptcy Court erred in concluding that the Appellant's interest in real property leased pursuant to the Hawaiian Homes Commission Act of 1920 is not a beneficial interest in a trust within the meaning of 11 U.S.C. § 541(c)(2).

2.	Whether the Bankruptcy Court erred in concluding that the value of the Appellant's interest in real property leased pursuant to the Hawaiian Homes Commission Act of 1920 must be included in the liquidation analysis of 11 U.S.C. § 1325(a)(4) without first having concluded that a hypothetical chapter 7 trustee could be expected to

satisfy the requirements of 11 U.S.C. § 365(c) for assuming and assigning the lease and that the Department of Hawaiian Home Lands of the State of Hawaii could lawfully consent to a Bankruptcy sale of a Hawaiian Home Lands residential leasehold absent a breach of a condition of the lease.

       3.      Whether, with respect to a residential lease of Hawaiian Home Lands real property, a hypothetical chapter 7 trustee could be expected to satisfy the requirements of 11 U.S.C. § 365(c) for assuming and assigning the lease.

       4.      Whether the Department of Hawaiian Home Lands of the State of Hawaii could lawfully consent to a Bankruptcy Court sale of a Hawaiian Home Lands residential leasehold absent a breach of a condition of lease.

(Maunakea Br. at 4–5; Gaspar Br. at 4–5.)

I.      <u>The HHCA</u>

The history of the HHCA has been well-chronicled by this Court, <u>e.g.</u> <u>Rice v. Cayetano</u>, 963 F. Supp. 1547, 1551–52 (D. Haw. 1997), <u>overruled on other grounds by</u> <u>Rice v. Caterano</u>, 520 U.S. 495 (2000); <u>Carrol v. Nakatani</u>, 188 F. Supp. 2d 1219, 1230–31 (D. Haw. 2001); <u>Araki v. Lingle</u>, 299 F. Supp. 2d 1114, 1119–20 (D. Haw. 2003), the Ninth Circuit, <u>e.g.</u> <u>Araki v. Lingle</u>, 477 F.3d 1048, 1054–56 (9th Cir. 2007); <u>Carrol v. Nakatani</u>, 342 F.3d 934, 943 (9th Cir. 2003), and the United States Supreme Court, <u>see</u> <u>Rice</u> 520 U.S. at 499–509. Passed in 1920, the primary purpose behind the act was "to rehabilitate the native Hawaiian population." <u>Id.</u> at 507 (citing H.R. Rep. No 839, at 1–2). The HHCA set aside 200,000 acres of land previously ceded to the United States "for the creation of

loans and leases to benefit native Hawaiians." <u>Arakaki</u>, 477 F. 3d at 1054. These

lands were to be leased exclusively to native Hawaiians for a term of ninety-nine

years at a nominal rate of one dollar per year.[5] HHCA § 208(1), (2) & (5).

In 1959, Hawaii was admitted to the union as the 50th state.

Admission Act of March 18, 1959 ("Admission Act"), Pub. L. 86-3, 73 Stat. 4

(1959). In the Admission Act, Hawaii compacted with the United States to adopt

the HHCA as a part of its constitution. <u>See id.</u> § 4 ("As a compact with the United

States relating to management and disposition of the Hawaiian home lands, the

Hawaiian Homes Commission Act, 1920 . . . shall be adopted as a provision of the

Constitution of [Hawaii.]"). The United States, with few exceptions, ceded to

Hawaii "title to all the public lands and other public property within the boundaries

of the State of Hawaii." <u>Id.</u> § 5(b). These lands, however, had to be held by the

State of Hawaii

> as a <u>public trust</u> for the support of the public schools and other public
> educational institutions, for the betterment of the conditions of native
> Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920,
> as amended, for the development of farm and home ownership on as
> widespread a basis as possible for the making of public improvements,
> and for the provision of lands for public use.

---

[5] The HHCA defines "native Hawaiian" as "any descendant of not less than
one-half part of the blood of the races inhabiting the Hawaiian Islands previous to
1778." HHCA § 201(a)(7).

Id. § 5(f) (emphasis added).  The land granted to Hawaii included the 200,000 acres that had been set aside under the HHCA and an additional 1.2 million acres. Araki, 477 F.3d at 1054.

Pursuant to the Admission Act, Hawaii amended its constitution.  The constitution states that "the spirit of the Hawaiian Homes Commission Act looking to the continuance of the Hawaiian homes projects for further rehabilitation of the Hawaiian race shall be faithfully carried out."  Haw. Const. art. XII, § 2.  It also states that "[t]he lands granted to the State of Hawaii by section 5(b) of the Admission Act . . . shall be held by the State as a public trust for native Hawaiians and the general public."  Haw. Const. art. XII, § 4 (emphasis added).  At issue before the court today is the intersection between this public trust, leaseholds granted pursuant to the HHCA, and federal bankruptcy law.

II.    Relevant Bankruptcy Code Provisions

Both Appellants filed Chapter 13 petitions and plans with the Bankruptcy Court.  Per section 1325 of the Bankruptcy Code, a court can only confirm a chapter 13 plan if "the value . . . of property distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title."  11 U.S.C. 1325(a)(4).  Colloquially known as the "best interest of the

creditor" test, section 1325(a)(4) provides that an unsecured creditor must receive

treatment in a chapter 13 plan "that is at least as favorable as the creditor would

receive under a chapter 7 liquidation." In re Beguilin 220 B.R. 94, 98–99 (B.A.P.

9th Cir. 1998.)  To determine the amount an unsecured creditor would be paid in a

hypothetical liquidation of the estate, a court must first determine what property is

included in the estate.  Pursuant to section 1306, property of the estate in a chapter

13 plan includes "property specified in section 541" of the code.  11 U.S.C.

§ 1306.

Section 541(c) of the Bankruptcy Code defines property of the estate

to include, inter alia:

> (c)(1) Except as provided in paragraph (2) of this subsection,
> an interest of the debtor in property becomes property of the
> estate . . . not withstanding any provision in an agreement,
> transfer instrument, or applicable nonbankruptcy law—
>
> > (A) that restricts or conditions transfer of such an interest
> > by the debtor;
>
> . . .
> (2) A restriction on the transfer of a beneficial interest of the
> debtor in a trust that is enforceable under applicable
> nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c).

It is Appellants' argument that a leasehold granted to a native

Hawaiian pursuant to the HHCA qualifies as a "beneficial interest . . . in a trust"

subject to a restriction on transfer under applicable nonbankruptcy law per 11 U.S.C. § 541(c)(2).  As a result, according to Appellants, the value of their leaseholds should be excluded from calculating the total value of their estate. Without the value of their leaseholds, general unsecured creditors would receive nothing in a hypothetical chapter 7 liquidation of Appellants' estates.  If true, Appellants' proposed chapter 13 plans would have satisfied the "best interest of the creditor" test as both plans provided for general unsecured creditors to receive more than what they would otherwise have received in a chapter 7 liquidation.

III.    Whether the Leaseholds are Property of the Estate

As a preliminary matter, leaseholds are considered distinct property interests in the State of Hawaii.  See Kiehm v. Adams, 125 P.3d 499, 504 (Haw. Ct. App. 2004) ("A lease of real property is both a conveyance of an estate in land (a leasehold) and a contract.") overruled on other grounds by Kiehm v. Adams, 126 P.3d 339 (Haw. 2005);  Bush v. Watson, 918 P.2d 1130, 1139 n.11 (Haw. 1996) ("[A] lease conveys an interest in land and transfers possession[.]" (quotations omitted));  Kapiolani Park Preservation Soc'y v. City and County of Honolulu, 751 P.2d 1022, 1028 (Haw. 1988) ("'If the instrument in question passes to the plaintiff a right to use the land for a definite term for a specific purpose, . . . it creates an "interest" in the land.'" (quoting McCandless v. John Ii Estate, Ltd. 11 Haw. 777,

789 (1899)).  Accordingly, leaseholds are generally considered property of the estate for purposes of the Bankruptcy Code.  See 11 U.S.C. § 541(c)(1) ("[A]n interest of the debtor in property becomes property of the estate . . . ."); Arizona Appetito's Stores, Inc. v. Paradise Village Invest. Co., 893 F.2d 213, 218 (9th Cir. 1990) ("A leasehold is property of the estate if a debtor is the lessee of the property at the time the petition for bankruptcy is filed.")  It is undisputed that the Appellants hold a leasehold in the Properties.  Appellants nevertheless maintain that their leaseholds should be excluded.

In their briefing, Appellants make much of the fact that the lands are held in trust for native Hawaiians and that DHHL owes native Hawaiians a fiduciary duty as trustee of that trust.  (See Maunakea Br. at 18–25; Gaspar Br. at 18–25.)  Appellee, however, does not dispute that the HHCA, the Admissions Act, and Article XII of the Hawaii Constitution creates a trust for the benefit of native Hawaiians.  (Appellee Br. at 1.)  Instead, it is Appellee's argument that the Bankruptcy Court was correct in finding that the leaseholds were not a beneficial interest of that public trust and therefore fall outside the purview of section 541(c)(2).  (Id.)  On this issue, the totality of Appellants' argument is that the Bankruptcy Court's decision "overlook[ed] . . . the overriding purpose of the Hawaiian Home Lands trust [which] is to actually place the beneficiaries of the

trust on the lands" and that "[t]he lease is the mechanism for carrying out [this] purpose." (See Maunakea Br. at 26–27; Gaspar Br. at 26–27.) The Court is not persuaded.

In support of its argument that the overriding purpose of the trust is to place native Hawaiians on the trust lands, Appellants rely on HHCA §§ 201.5 and 101. Section 201.5 provides:

> The United States and State of Hawaii hereby reaffirm and recognize that: . . . The United States has a unique trust responsibility to promote the welfare of the aboriginal, indigenous people of the State, and the federal government has delegated broad authority to the State to act for their betterment;

HHCA § 201.5. Section 101 states:

> (a) The Congress of the United States and the State of Hawaii declare that the policy of this Act is to enable native Hawaiians to return to their lands in order to fully support self-sufficiency for native Hawaiians and the self-determination of native Hawaiians in the administration of this Act, and the preservation of the values, traditions, and culture of native Hawaiians.

> (b) The principal purposes of this Act include but are not limited to:

> > (1) Establishing a permanent land base for the benefit and use of native Hawaiians, upon which they may live, farm, ranch, and otherwise engage in commercial or industrial or any other activities as authorized in this Act;

> > (2) Placing native Hawaiians on the lands set aside under this Act in a prompt and efficient manner and assuring long-term tenancy to beneficiaries of this Act and their successors;

(3) Preventing alienation of the fee title to the lands set aside under this Act so that these lands will always be held in trust for continued use by native Hawaiians in perpetuity;

(4) Providing adequate amounts of water and supporting infrastructure, so that homestead lands will always be usable and accessible; and

(5) Providing financial support and technical assistance to native Hawaiian beneficiaries of this Act so that by pursuing strategies to enhance economic self-sufficiency and promote community-based development, the traditions, culture and quality of life of native Hawaiians shall be forever self-sustaining.

(c) In recognition of the solemn trust created by this Act, and the historical government to government relationship between the United States and Kingdom of Hawaii, the United States and the State of Hawaii hereby acknowledge the trust established under this Act and affirm their fiduciary duty to faithfully administer the provisions of this Act on behalf of the native Hawaiian beneficiaries of the Act.

HHCA § 101. First, the Court notes that according to section 101 there are <u>five</u>

purposes underlying the HHCA rather than one "overriding" purpose as Appellants

contend. (<u>See</u> Maunakea Br. at 26; Gaspar Br. at 26.) Second, Appellants provide

<u>no</u> case law in support of the proposition that the defined "purpose" of a trust is

illustrative of the trust's "beneficial interest" as contemplated under § 541(c)(2) of

the Bankruptcy Code. (<u>See</u> Maunakea Br. at 26; Gaspar Br. at 26.) In any event,

Appellants' reliance on these statutory provisions is misguided. Section 201.5 was

enacted by the Hawaii State Legislature in June 2001. 2001 Haw. Sess. Laws, Act

302.  Section 4 of Act 302, however, provides that "this Act shall take effect upon its approval and with the consent of Congress."  Id. § 4.  Section 101 was enacted in July 1990 and was also subject to Congressional approval before taking effect.  1990 Haw. Sess. Laws, Act 349.  Congress has not yet consented to either of these new sections of the HHCA.  Accordingly their persuasive value is limited at best.[6]

Even assuming, however, that these sections demonstrate the purpose of the HHCA and that this purpose is illustrative of the "beneficial interest" created by the public trust, the Court is still not convinced.  Reading these sections in conjunction with the rest of the HHCA, it becomes clear that the purpose behind the HHCA is not to keep individual native Hawaiians on the property, but rather to ensure that all native Hawaiians reap the benefit of the land "to the fullest extent possible."  Aged Hawaiians v. Hawaiian Homes Comm'n, 891 P.2d 279, 298 (Haw. 1995).

Not one of the unenacted sections to which Appellants cite suggests that the purpose of the act is to keep a specific or individual native Hawaiian on a particular tract of land.  Instead, the sections contemplate native Hawaiians in

_____

[6] Appellants argue that §§ 201.5 and 101are nonetheless "highly persuasive" because they are in accord with the Congressional legislative history surrounding the original HHCA.  (Reply at 4–8.)  The Court need not address the merits of this argument because, as discussed infra, even assuming the persuasive nature of these sections, Appellants still would not prevail.

general. For instance, Section 101(b) states that a principal purpose of the act is to "[e]stablish a permanent land base for the benefit and use of native Hawaiians." HHCA § 101(b)(1) (emphasis added). This provision does not contemplate establishing a permanent land base for the use by an individual native Hawaiian but instead discusses native Hawaiians generally. This is the case with all of section 101. See, e.g., id. § 101(b)(2) (finding a principal purpose to be "placing native Hawaiians on the lands set aside under this Act." (emphasis added)); id. § 101(b)(3) (finding another purpose to be "[p]reventing alienation of the fee title to the lands set aside . . . so that these land will always be held in trust for continued use by native Hawaiians"(emphasis added)); id. § 101(a) ("the policy of this Act is to enable native Hawaiians to return to their lands"(emphasis added)); Kahalewai v. Rodrigues, 667 P.2d 839, 844 (Haw. Ct. App. 1983) (finding that the HHCA's purpose is "to place [Native Hawaiians] upon the land to insure their rehabilitation"). To glean from these sections that the purpose of the HHCA is to ensure specific, individual native Hawaiians have a leasehold in these properties is contrary to a natural reading of the language of these sections which only speak of native Hawaiians generally. See Carlisle v. One (1) Boat, 195 P.3d 1177, 1188 (Haw. 2008) ("[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning."); Kahoʻohanohano v.

21

Dep't of Human Servs., 178 P.3d 538, 564 (Haw. 2008) ("It is a well-established rule of statutory construction that this court's foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.").

The enacted provisions of the HHCA also contemplate that the lands are held in trust for native Hawaiians in general rather than individually. See, e.g., HHCA § 207(a) ("The commission is authorized to lease to native Hawaiians the right to use and occupancy of a tract of Hawaiian home lands . . . .")  Indeed, the HHCA specifically contemplates a transfer of tracts of land among native Hawaiians subject to DHHL approval. See id § 208(5).  Accordingly, the Court finds Appellants overreach in arguing that the primary purpose of the trust is to ensure is that specific, individual native Hawaiians have a long-term leasehold in property.

This result also comports with much of the case law surrounding the HHCA.  In Day v. Apoliona, 496 F.3d 1027 (9th Cir. 2007), the Ninth Circuit found

> [E]ach Native Hawaiian plaintiff, as a beneficiary of the trust created by [HHCA § 5(f)], has an individual right to have the trust terms complied with, and therefore can sue under § 1983  for violation of that right. Violations of this right may include, at minimum, wrongs of

> the type of which Day complains: expenditure of funds for purposes
> not enumerated under § 5(f).

Id. at 1039.  Thus, all native Hawaiians are beneficiaries of the public trust rather

than just individuals situated on tracts of land set aside under the HHCA.  Indeed,

the Hawaii Supreme Court has been clear that the HHCA created a "trust

obligation benefitting the aboriginal people" and that the DHHL has a fiduciary

duty under the HHCA to act on behalf of all native Hawaiians.  Ahuna v. Dep't. of

Hawaiian Home Lands, 640 P.2d 1161, 1168 (Haw. 1982); see also Aged

Hawaiians, 891 P.2d at 300 ("Native Hawaiian beneficiaries of the federal-state

compact, which is contained in the Hawai'i Admission Act and incorporates

HHCA trust obligations, may pursue claims under § 1983 . . . .").  The Court

therefore believes the underlying purpose of the act is to establish a trust that

benefits all native Hawaiians rather than the few that currently have a leasehold in

the lands set aside under the HHCA.  Accordingly, to the extent that the purpose is

illustrative of the "beneficial interest" of the public trust created by the HHCA, it

does not suggest that an individual native Hawaiian's lease is a beneficial interest

of the trust.

    Instead, the Court believes that the "beneficial interest" that the public

trusts creates with respect to these properties is the right to be considered for the

leasehold to the exclusion of non-native Hawaiians.  This result stems naturally

from the language of the HHCA, specifically the requirements that the lessee must

be a native Hawaiian and that a native Hawaiian can only transfer a lease to

another native Hawaiian.  HHCA § 208 (1),(5).  It is also consistent with the broad

language of Section 101 as well as the case law surrounding the HHCA that make

clear that the lands are held in trust for <u>all</u> native Hawaiians.  Accordingly, the

lease itself is separate and distinct relationship from the terms and conditions of the

trust as established by the HHCA.  The leaseholds are not, therefore, a beneficial

interest created by the trust as Appellants contend.  Indeed, the Court is persuaded

by the analogy proffered by the Bankruptcy Court.  (Gaspar App., ex. 12, at 11–12;

Maunakea App., ex. 12, at 11–12.)  Here the beneficial interest created by the

trust—the fact that native-Hawaiians are considered for these leaseholds to the

exclusion of non-native Hawaiians—is not the same as the lease itself, whereby an

individual native Hawaiian receives an actual property interest in the land.  As a

result, the leaseholds are not a beneficial interest created by the trust and must be

included in the estate per 11 U.S.C. § 541(c)(2).

IV.     Whether the Homestead could be Liquidated

In the alternative, Appellants argue that the value of the Properties

should be excluded from the liquidation analysis of 11 U.S.C. § 1325(a)(4) because

a hypothetical trustee could not transfer the lease without the DHHL's consent and the DHHL would not consent to a transfer in light of the circumstances Appellants face. (<u>See</u> Maunakea Br. at 32–33; Gaspar Br. at 32–33.) This is the precise and limited issue on which the Court requested Supplemental Briefing at the hearing.

Section 365 of the Bankruptcy Code gives a trustee in bankruptcy the authority to assume, assign, or reject the executory contracts and unexpired leases of the debtor, notwithstanding any contrary provisions appearing in such contracts or leases. <u>In re Catapult Entertainment, Inc</u>, 165 F.3d 747, 749 (9th Cir. 1999); <u>see also</u> 11 U.S.C. § 365(f)(1) ("[N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection."). This authority is not, however, absolute. A trustee

> may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignments of rights or delegation of duties if—
>
> > (1) (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

> (B) such party does not consent to such assumption or
> assignment[.]

11 U.S.C. § 365(c).  To determine the applicability of section 365(c), "a court must ask why the "applicable law prohibits assignment.  Only if the law prohibits assignment on the rational that the identity of the contracting party is material will subsection (c)(1) rescue it."  In re Catapult Entertainment, Inc, 165 F.3d at 749.  The Ninth Circuit has adopted the "hypothetical test" to resolve this question.  Succinctly stated,

> a debtor in possession may not assume an executory contract over the
> nondebtor's objection if applicable law would bar assignment to a
> hypothetical third party, even where the debtor in possession has no
> intention of assigning the contract in question to any such third party.

Id. at 750.

Here the applicable law is the HHCA and the DHHL is the nondebtor that would have to object.  Appellee's concede that the first prong of the exception outlined in section 365(c) is satisfied.  (Appellee's Br. at 12.)  Specifically, "[the HHCA] excuses [the DHHL,] a party[] other than the debtor, from accepting performance or rendering performance to an entity other than [Appellants.]"  11 U.S.C. § 365(c)(1)(A).  The focus of the parties' disagreement is whether the DHHL would consent to an assignment per 11 U.S.C. § 365(c)(1)(B).

As a preliminary matter, the burden here is squarely on the Appellants. "The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation." In re Hill, 268 B.R. 548, 552 (9th Cir. B.A.P. 2001). One such element, as discussed, is satisfaction of "the best interest of the creditors test." 11. U.S.C. § 1325(a)(4). Satisfaction of this requirement here turns on whether the DHHL would object to the assignment of the leaseholds from Appellants to a hypothetical third-party. Accordingly, it is the Appellants burden to demonstrate that the DHHL would object to the transfer of the leaseholds.[7]

Appellants assert in their briefing that "[i]t is implausible that the DHHL would consent to a bankruptcy sale of a Hawaii homestead." (See Maunakea Br. at 34; Gaspar Br. at 34.) In support of this proposition Appellants first argue that section 205(1) of the HHCA, which states that lands are to be sold or leased only "[i]n the manner and for the purposes set out in this title," precludes paying a homesteader's general creditors from the proceeds of a bankruptcy sale. See HHCA § 205(1). Relying on Kahalewai, Appellants assert that this would be

_____

[7] The parties suggest that the appropriate standard here is to demonstrate whether a hypothetical trustee "can reasonably be expected to succeed." See In re Kelly, 378 B.R. 769, 771 (Bankr. M.D. Pa. 2007). The Court need not determine what standard Appellants need satisfy because, as discussed infra, the Court does not believe Appellants have made any showing with respect to this issue.

contrary to a principle purpose of the act—to "protect the lessee from improvidently alienating or encumbering the lease[.]" 667 P.2d at 884. Appellants' reliance on <u>Kahalewai</u>, however, is misplaced. The Court in <u>Kahalewai</u>, and as discussed <u>supra</u>, stated that the purpose of the act "was to place [Native Hawaiians] upon the land to insure their rehabilitation." <u>Id.</u> Appellee does not assert that he will transfer the lease to anyone other than a native Hawaiian. The Court is therefore not persuaded by this argument.

Appellants next argue that a "forced transfer of a leasehold interest is qualitatively the same thing as a cancellation" and that section 210 of the HHCA sets out the "limited circumstances" under which a lease may be cancelled. (<u>See</u> Maunakea Br. at 35; Gaspar Br. at 35.) Indeed, in their Supplemental Briefing, Appellants reiterate this point arguing that the only "circumstances under which a native Hawaiian lessee can be divested of his DHHL leasehold interest and forced to forfeit his ownership of improvements" are provided for under section 210 of the HHCA. (Appellants' Supp. Br. at 6.) In its entirety, Section 210 of the HHCA provides as follows:

> Whenever the department has reason to believe that any condition enumerated in section 208 or any provision of section 209, of this title has been violated, the department shall give due notice and afford opportunity for a hearing to the lessee of the tract in respect to which the alleged violation relates or to the successor of the lessee's interest therein, as the case demands. If upon such hearing the department

finds that the lessee or the lessee's successor has violated any
condition in respect to the leasing of such tract, the department may
declare the lessee's interest in the trace and all improvements thereon
to be forfeited and the lease in respect thereto canceled, and shall
thereupon order the tract to be vacated within a reasonable time. The
right to use and occupancy of the Hawaiian home lands contained in
such tract shall thereupon revest in the department and the department
may take possession of the tract and the improvements thereon.

HHCA § 210. Appellants contend that there were no facts in evidence that suggest

the terms and conditions of section 210 had not been satisfied and that the

Appellants could not therefore be divested of their leasehold. (Appellants' Supp.

Br. at 6–10.) The Court is not persuaded.

First, a cancellation and a forced transfer are not qualitatively the

same under the HHCA. The HHCA permits a forced transfer of a lease by

resorting to "attachment, levy, or sale upon court process . . . in pursuance of [a]

transfer to a . . . native Hawaiian[.]" HHCA § 208(5). The HHCA specifically

contemplates the different circumstances in which a forced transfer and a

cancellation take place; a forced transfer and a cancellation are therefore not

qualitatively the same. Accordingly, Appellants' suggestion that section 210 is the

only means by which a native Hawaiian may be divested of his or her leasehold is

without merit.

In any event, the Court disagrees with Appellants' characterization of

this hypothetical transfer as forced. It is a maxim of bankruptcy law that a trustee

"stands in the shoes" of the debtor.  See Smith v. Arthur Andersen LLP, 421 F.3d

989, 1002 (9th Cir. 2005) (citing Shearson Lehman Huton, Inc. v. Wagoner, 944

F.2d 114, 118 (2d Cir. 1991).  Indeed, the trustee is "the representative of the

bankrupt estate and has the capacity to sue and be sued [as well as] collect and

reduce to money the property of the estate."  Id. (quotations and citations omitted).

Property of the estate includes "all legal or equitable interests of the debtor in

property as of the commencement of the case . . . including the debtor's 'causes of

action.'"  Id. (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9

(1983)).  In light of these principles, there is simply nothing forced about this

transfer.  The trustee, standing in the shoes of the debtor, would simply effectuate a

transfer of the leasehold to another native Hawaiian.  For the purposes of the

Bankruptcy Code and this analysis, it would be as though Appellants themselves

had voluntarily decided to transfer the leasehold.  Although couched in the

negative, the HHCA makes provision for such a transfer.  See HHCA § 208(5)

("The lessee shall not in any manner transfer to . . . any other person, except a

native Hawaiian, and then only upon the approval of the [DHHL] . . . his interest in

the tract.").  Moreover, although section 210 contemplates divestiture of a

leasehold by the DHHL, see HHCA § 210 ("[If certain conditions are satisfied] the

department may declare the lessee's interest in the trace and all improvements

thereon to be forfeited . . . ."(emphasis added)), there is nothing in the HHCA which suggests the DHHL's consent to a transfer, as required by HHCA section 208(5), is conditioned on a violation of the terms and conditions of section 210. Thus, Appellants' reliance on section 210 is inapposite.

Appellants finally argue that even if DHHL were to approve such a transfer it would be in violation of its fiduciary duties as illustrated by the purposes of the act. (See Maunakea Br. at 36; Gaspar Br. at 36.) Once more, Appellants rely upon the unenacted provisions of the HHCA as illustrative of the purposes of the act. As above, the Court finds these provisions are of limited probative value at best. In any event, as discussed, the DHHL owes its fiduciary to the entire native Hawaiian population. Consenting to a lease transfer from one native Hawaiian to another in a chapter 7 liquidation would not be a breach of this fiduciary duty as this would comport with the underlying purposes of the act.

In sum, the Appellants simply have not proffered any evidence or a plausible legal argument as to why the DHHL would withhold their consent to what, in the eyes of the law, is nothing more than a voluntary transfer from one native Hawaiian to another. As the Bankruptcy Court pointed out, while the limited options for liquidation under the HHCA might substantially depreciate the value the leasehold, it is property of the estate nonetheless.

<u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the Bankruptcy Court's

decision.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 4, 2011.

_____
David Alan Ezra
United States District Judge

<u>In re Buddy Vincent Kalei Maunakea and Kimberly Kuuipo Maunakea, Debtors,</u>
<u>Maunakea, et al. vs. Howard M.S. Hu</u>; <u>In re Iver Kimlan Momi Gaspar, Debtor,</u>
<u>Gaspar vs. Howard M.S. Hu</u>; Civil No. 10-00432 DAE-KSC; ORDER
AFFIRMING BANKRUPTCY COURT'S DECISION